IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-350-BO-KS

| | | |
|---|---|---|
| ALISA BLACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHAEL DAVID WATERS, in his individual, and official capacity, as the District Attorney of the Eleventh Prosecutorial District of North Carolina, | ) | |
| | ) | |
| Defendant. | ) | |

This cause comes before the Court on defendant's motions to dismiss the original and amended complaints. The appropriate responses and replies have been filed, or the time for doing so has expired, and a hearing was held before the undersigned on January 22, 2026, at Raleigh, North Carolina. In this posture, both motions are ripe for disposition. For the reasons that follow, plaintiff's complaint is dismissed.

## BACKGROUND

Plaintiff initiated this action by filing a complaint on June 20, 2025. [DE 1]. Defendant appeared and moved to dismiss plaintiff's complaint. [DE 10]. In response, plaintiff filed an amended complaint, [DE 14], which defendant has moved to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

In her amended complaint, plaintiff alleges as follows. Plaintiff is a Black female who works as an Assistant District Attorney (ADA) for the 11th Prosecutorial District of North Carolina. Defendant Michael Waters, a Caucasian male, during all relevant times was the elected District Attorney (DA) for the 11th Prosecutorial District and as such is a constitutional officer of

the State of North Carolina. Plaintiff has been licensed as an attorney in North Carolina since 1999 and has worked as an ADA in the 11th Prosecutorial District since 2019. Prior to 2019, plaintiff worked as an ADA in the 9th Prosecutorial District, as an Administrative District Attorney, and in private practice.

In July 2023, plaintiff learned that her non-Black ADA colleagues had received a pay raise approved by defendant. Plaintiff inquired as to why she had not received a raise, and when defendant responded to her inquiry in September 2023 he told plaintiff that he would approve her for a raise. In October 2023, plaintiff learned that all ADAs were receiving a pay raise due to actions by the North Carolina General Assembly. Plaintiff determined that she was receiving significantly less money than her similarly situated colleagues. Plaintiff emailed defendant in December 2023 again raising concerns about pay disparities. Plaintiff and defendant met in January 2024 to discuss plaintiff's concerns, but defendant took the opportunity to reprimand plaintiff and issued her a four-page letter identifying deficiencies in her job performance. Plaintiff was informed that she would not be receiving an increase in her salary. Plaintiff further alleges that she did not receive regular job performance reviews as did her non-Black colleagues, and that defendant meant to embarrass her by speaking to her in a rude, offensive manner, that he applied workplace policies more favorably to white ADAs than Black ADAs, and that he allowed non-employees to influence his decisions which would have a negative impact on plaintiff.

Plaintiff alleges claims under Title VII of the Civil Rights Act of 1964 for race discrimination and retaliation. Plaintiff further alleges claims for race discrimination and retaliation under 42 U.S.C. § 1983 and for First Amendment retaliation.

## DISCUSSION

At the outset, in light of the filing of an amended complaint, defendant's motion to dismiss the original complaint [DE 10] is denied as moot. *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017).

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal for lack of personal jurisdiction. When personal jurisdiction has been challenged on the papers alone, the plaintiff must make a prima facie case showing that personal jurisdiction exists, and a court construes all facts and inferences in favor of finding jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the

claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This standard does not require detailed factual allegations, *id.*, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Defendant argues first that plaintiff's official capacity 42 U.S.C. § 1983 claims are barred by sovereign and Eleventh Amendment immunity.[1] The Court agrees.

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). This guarantee applies not only to suits against the state itself but also to suits where "one of [the state's] agencies or departments is named as the defendant[,]" as well as where state officers are sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-102 (1984). The Eleventh Amendment bars suit against a state in federal court regardless of the nature of the relief that is sought, *id.* at 100, unless one of the limited

[1] Though the Fourth Circuit has not definitively decided whether Eleventh Amendment immunity should be considered under 12(b)(1), 12(b)(2), or 12(b)(6), the Court considers it under 12(b)(1). *See Johnson v. North Carolina, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012); Kirby v. N. Carolina State Univ.*, No. 5:13-CV-850-FL, 2015 WL 1036946, at *3 (E.D.N.C. Mar. 10, 2015), *aff'd*, 615 F. App'x 136 (4th Cir. 2015).

exceptions, such as consent or abrogation, applies. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Seminole Tribe v. Florida*, 517 U.S. 44, 55-56 (1996).

Plaintiff does not dispute that her § 1983 claims against defendant in his official capacity are barred to the extent she seeks monetary damages, but she argues that she also seeks prospective injunctive relief under *Ex Parte Young*. Under *Ex Parte Young*, "federal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). Where the effect of a declaratory judgment and injunction would be to "undo accomplished state action[,]" the *Ex Parte Young* exception does not apply. *Id.* at 628. Moreover, "even though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation." *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016). Plaintiff seeks an injunction and declaration prohibiting defendant from continuing to engage in discriminatory and retaliatory conduct and an order compelling defendant to stop engaging in unconstitutional practices. [DE 14] at 13. Plaintiff's request for declaratory and injunctive relief seeks, at bottom, to "undo accomplished state action[.]" *Paraguay*, 134 F.3d at 628. Plaintiff has not plausibly alleged prospective injunctive relief under *Ex Parte Young*, and all of her § 1983 claims against defendant in his official capacity are dismissed.

Defendant next argues that plaintiff's Title VII claims fail as a matter of law. Again, the Court agrees. First, Title VII authorizes claims against employers, not individuals alleged to have participated in acts of discrimination. *See* 42 U.S.C. § 2000e(b); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998) (Title VII does not provide remedy against individual defendants who are not employers); *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017)

(same). As plaintiff has alleged, as District Attorney, defendant is an elected, independent constitutional officer of North Carolina. *See* N.C. Const. art. IV, § 18. But even if defendant is an employer under Title VII, plaintiff is not an employee.

Title VII defines employee to exclude (1) individuals elected to public office and (2) "any person chosen by such officer to be on such officer's personal staff," (3) "an appointee on the policy making level" and (4) "an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." 42 U.S.C. § 2000e(f). Whether a person is an employee under Title VII is a question of federal law, though reference to state law may be relevant where it describes the nature and circumstances of the plaintiff's position. *Curl v. Reavis*, 740 F.2d 1323, 1327 (4th Cir. 1984).

Courts generally consider a non-exhaustive list of factors to determine whether a plaintiff falls under the "personal staff" exception to Title VII's definition of employee which includes:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Teneyuca v. Bexar Cnty.*, 767 F.2d 148, 151 (5th Cir. 1985) (citing favorably *Curl*, 740 F.2d at 1328).

Under North Carolina law, ADAs are appointed by the elected DA and serve at the DA's pleasure. N.C. Gen. Stat. § 7A-63. ADAs report to and are only accountable to the elected District Attorney. *See State v. Camacho*, 329 N.C. 589, 593 (1991); *see also State v. Giese*, 386 N.C. 127, 131 n.2 (2024) (ADAs are "'lawful designees' of a DA's power and responsibility") (citation omitted). ADAs certainly represent District Attorneys in the public eye and a District Attorney

maintains control over ADA assignments and responsibilities. The Court concludes, that, on balance, the factors support that ADAs are not employees under Title VII.

Even assuming, however, that ADAs are employees under Title VII,[2] plaintiff has failed to plausibly allege her Title VII claims. "The elements of a prima facie case of race discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Wright v. Hertford Cty. Bd. of Educ.*, No. 2:23-CV-30-D, 2024 WL 85926, at *9, 2024 U.S. Dist. LEXIS 3911, *25 (E.D.N.C. Jan. 8, 2024) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). To state a Title VII discrimination claim, a plaintiff must plausibly allege facts that support a reasonable inference that the defendant took adverse employment action because of a protected characteristic. *See, e.g., McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585–87 (4th Cir. 2015). A plaintiff does not need to establish a prima facie case at the motion-to-dismiss stage, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002), but she must allege sufficient facts to provide a clear understanding of the nature of the alleged discrimination and to connect the adverse employment action to a protected characteristic. *McCleary-Evans*, 780 F.3d at 585.

Title VII prohibits discrimination in compensation or other terms and conditions of employment based on an employee's race. 42 U.S.C. § 2000e-2(a)(1). Plaintiff's allegations fall short of the requisite showing at this stage. Though she plainly alleges that she did not receive raises that other, non-Black ADAs received, she fails to plausibly allege that these comparators were similarly situated in terms of their experience, assignments, or responsibility. For example,

---

[2] *See Shaffer v. Gaither*, No. 5:14-cv-00106-MOC-DSC, 2015 U.S. Dist. LEXIS 33522, at *9 (W.D.N.C. Mar. 17, 2015) (declining to decide whether ADAs in North Carolina are subject to the personal staff exception at the 12(b)(6) stage).

plaintiff identifies two non-Black comparators who had the same job title as plaintiff but who plaintiff contends were paid more, but she fails to allege any specific facts which would support that these comparators' job responsibilities, tenure, and experience were the same as plaintiff's. *See Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (comparator must be "similarly-situated in all respects.") (internal quotation, citation, and emphasis omitted).

To establish a prima facie showing of retaliation under Title VII, a plaintiff must ultimately show that she engaged in protected activity, that she suffered adverse action, and that there is a causal connection between the protected activity and the adverse action. *Williams v. Guilford Tech. Cmty. Coll. Bd. of Trs.*, 117 F. Supp.3d 708, 720 (M.D.N.C. 2015). "The adverse employment action must be one that a reasonable employee would have found materially adverse, which [can mean] that it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citation omitted).

Plaintiff alleges that, after she engaged in protected activity, she suffered a reprimand and low performance evaluation, that defendant spread rumors about plaintiff and engaged in unwarranted scrutiny of her job performance, and that defendant refused to increase her pay appropriately. In her opposition to the motion to dismiss, plaintiff relies on her allegation that her pay was not increased in line with that of her non-Black co-workers to support this claim. *See also* [DE 19] at 19-21 (arguing that reprimands without consequences and workplace annoyances not materially adverse action). While the failure to receive a raise in line with those received by her co-workers outside her protected class may well constitute adverse action, plaintiff has not alleged protected action prior to the denial of a pay raise. "'Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (quoting *Landino v. Sapp*, 520 F. App'x

195, 198 (4th Cir. 2013)). Plaintiff alleges that she communicated with defendant about employment discrimination regarding pay disparities, and specifically alleges that she requested that defendant explain why plaintiff had not received a pay raise in July 2023, that she emailed defendant concerning pay disparities in December 2023, and that she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in May 2024. Plaintiff does not allege that she complained to defendant about pay inequities *based on race* or any other protected characteristic in 2023. Though plaintiff's EEOC charge identifies race as the basis for discrimination in pay, her EEOC charge was filed after she did not receive a pay raise, and thus cannot form the basis of plaintiff's retaliation claim.

As to plaintiff's § 1983 claims against him in his individual capacity, defendant raises the defense of qualified immunity. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). When a court's decision at one step is dispositive, it need not reach the other. *See Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015).

As defendant has argued, plaintiff's claims for race discrimination and retaliation under § 1983 are barred by qualified immunity. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). As discussed above, plaintiff has not plausibly alleged that she was subjected to race discrimination or retaliation. *See Rorie v. Bd. of Educ. of Charles Cnty.*, 653 F. Supp. 3d 217, 230 (D. Md. 2023) (standards for Title VII and § 1983 race discrimination in public employment claims are the same); *Glanville v. Mayor & City Council of Baltimore, Maryland: Baltimore Police Dep't*, No. CV EA-23-3395, 2024 WL 5264381, at *13 (D. Md. Dec. 31, 2024). Moreover, even assuming, without deciding, that plaintiff has plausibly alleged a constitutional violation by defendant, she has failed to allege that her clearly established rights were violated. Plaintiff complains of workplace disagreements and slights, rude behavior, an unfair evaluation, and the denial of pay raise commensurate with her colleagues. Plaintiff alleges that she complained that she did not receive a pay raise and that she was concerned about pay disparities. Plaintiff has not identified any case in which such conduct has been found to transgress a bright line, and defendant is entitled to qualified immunity.

Finally, plaintiff's First Amendment retaliation claim is also properly dismissed. Plaintiff alleges that her complaints of discrimination were focused not only on herself but also on systemic discrimination related to pay disparities between Black and non-Black employees in the office under defendant's supervision. "As a general matter, the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (cleaned up, citation omitted). To establish a First Amendment retaliation claim, a plaintiff must demonstrate that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action

that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (cleaned up).

"To determine whether a public employer's action against an employee violates the First Amendment, we must balance the employee's interest 'as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Campbell v. Galloway*, 483 F.3d 258, 266 (4th Cir. 2007) (citation omitted). "So long as [public] employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). Matters of public concern include issues of political, social, or other interests to a community. *Campbell*, 483 F.3d at 267. Matters of public concern do not include personal grievances, complaints about employment, and topics of personal interest. *Id.*

Though plaintiff makes a bare allegation that her speech was on matters of public concern, her detailed allegations reveal that they concerned complaints about her own employment and personal interests. Plaintiff complained to defendant about her own salary, lack of performance evaluation, and mistreatment. This does not rise to the level of a First Amendment violation. *See Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 343 (4th Cir. 2017). Alternatively, to the extent plaintiff has plausibly alleged a constitutional violation, defendant would be entitled to qualified immunity because it was not clearly established that making internal complaints regarding perceived pay disparities and a poor performance evaluation are protected activities under the First Amendment.

The Court determines that defendant is entitled to qualified immunity for plaintiff's § 1983 individual capacity claims against him. Therefore, the motion to dismiss is granted in full.

## CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion to dismiss the original complaint [DE 10] is DENIED without prejudice as MOOT and defendant's motion to dismiss plaintiff's amended complaint [DE 18] is GRANTED. Plaintiff's official capacity claims under 42 U.S.C. § 1983 are DISMISSED without prejudice and her remaining claims are DISMISSED with prejudice. The clerk is DIRECTED to enter judgment in favor of defendant and close this case.

SO ORDERED, this 8 day of September 2026.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE